# Third District Court of Appeal

## State of Florida

Opinion filed March 15, 2017.

_____

No. 3D15-786
Lower Tribunal No. 13-20251
_____

**Charles Viscito,**

Appellant/Cross-Appellee,

vs.

**Barbara Viscito,**

Appellee/Cross-Appellant.

An Appeal from the Circuit Court for Miami Dade County, Spencer Eig and Barbara Areces, Judges.

Crabtree & Auslander and John G. Crabtree, Charles M. Auslander, George R. Baise, Jr. and Brian C. Tackenberg, for appellant/cross-appellee.

Richard A. Schurr; Christy L. Hertz and Katie Gill, for appellee/cross-appellant.

Before SUAREZ, C.J., and LAGOA and SALTER, JJ.

SALTER, J.

On Motion for Rehearing

On consideration of the appellant's motion for rehearing and the response, we grant the motion, withdraw our opinion in this case issued December 21, 2016, and replace it with the opinion which follows.

Charles Viscito ("Former Husband") appeals two aspects of an amended final judgment of dissolution of his marriage to Barbara Viscito ("Former Wife"). The Former Wife cross-appeals certain determinations within the amended final judgment as well. Finding no error, we affirm the trial court's amended final judgment.

Issues

The Former Husband argues that the trial court's computation of his equitable interest in a Key Biscayne condominium was erroneous. On cross-appeal, the Former Wife argues that the trial court's award of passive, market-driven appreciation relating to the condominium was erroneous because an incorrect valuation date was used. This argument, however, was withdrawn by the Former Wife before the case was heard at oral argument.

The Former Husband's second claim asserted here, but not below, is for some form of alimony other than permanent periodic alimony. The Former Wife's second point on cross-appeal challenges any such claim by the Former Husband.

Analysis

"The standard of review of a trial court's determination of equitable distribution is abuse of discretion." Bardowell v. Bardowell, 975 So. 2d 628, 629 (Fla. 4th DCA 2008) (quoting Kovalchick v. Kovalchick, 841 So. 2d 669, 670 (Fla. 4th DCA 2003)). The issues addressed by the trial court were not unalloyed issues of law, but rather mixed issues of law and fact.

In the present case, many of the facts regarding the parties' equitable interests in the Key Biscayne condominium (which served as the marital residence during the marriage) were not in dispute. The Former Wife and her sister purchased the condominium four years before the Former Wife married. The Former Husband and Former Wife bought the Former Wife's sister's 50% ownership interest six years into the marriage. The condominium was titled exclusively in the name of the Former Wife, however, and the marital funds invested in the condominium were exceeded by refinancing proceeds expended in substantial part because the Former Husband had a secret gambling problem and was unemployed.[1] These problems culminated in a Chapter 13 bankruptcy proceeding during the marriage.

The trial court determined, based on competent and largely undisputed evidence, that the fair market value of the condominium at the date of marriage was $255,000.00, at which time the mortgage balance was $133,000.00. At the

---

[1] The trial court found, based on expert vocational evaluation testimony, that the Former Husband's unemployment after late 2001 was voluntary.

time of trial, the fair market value of the condominium was $690,000.00, and the mortgage balance was $224,448.00.

Applying the provisions of section 61.075, Florida Statutes (2015), governing equitable distribution of marital assets and liabilities, the trial court concluded that only 50% of the passive, market-driven appreciation during the marriage should be awarded to the Former Husband. The Former Wife retained title to the condominium and exclusive liability for the mortgage debt encumbering it.

The trial court computed the passive appreciation as specified in Kaaa v. Kaaa, 58 So. 3d 870 (Fla. 2010), and section 61.075(6)(a)1.b, Florida Statutes (2015). The loan-to-value ratio computed at the time of the marriage (.522 in this case) was multiplied by the current fair market value ($690,000.00), yielding the amount of $360,180.00. The current mortgage amount, $224,448, was subtracted from that amount, yielding a total passive appreciation figure of $135,732.00. The trial court found that although marital funds had been used for part of the acquisition of the Former Wife's sister's 50% interest in the condominium and to make certain mortgage payments, the aggregate mortgage debt had also increased as a result of the Former Husband's gambling and losses and voluntary unemployment. Accordingly, the Former Husband's award of passive, market-

4

driven appreciation of the condominium was reduced to half of the total, or $67,866.00.[2]

We reject the Former Husband's argument that he should be awarded a higher figure based on a computation allowing him one-half of the net fair market value of the condominium, plus one-half of the passive, market-driven appreciation on the Former Wife's non-marital interest, plus certain mortgage payments from marital funds that allegedly reduced the mortgage debt on the non-marital interest in the condominium. The Former Husband's computation does not take into account the increases in the mortgage debt caused by the Former Husband's gambling losses and unemployment. The Former Husband's calculation also does not follow the algorithm detailed in Kaaa, which adjusts the allocation by accounting for the loan-to-value ratio of the property at the time of the marriage.

We find no abuse of discretion in the trial court's decisions regarding equitable distribution relating to the condominium, particularly given the use of the Former Wife's non-marital property to obtain refinancing proceeds in an effort to stanch the Former Husband's conceded gambling losses and the impact of his voluntary unemployment.

---

[2] The Former Husband was also awarded one of two parking space and one of two storage units at the condominium, as the trial court concluded that these property interests were acquired with proceeds of a refinancing during the marriage. Neither party challenged that determination here.

5

The Former Husband's second issue is directed to the denial of his request for permanent periodic alimony. He argues that the marriage of 21 years, his unemployment since 2001 (and status as a stay-at-home father for 12 years of the marriage), and the Former Wife's income required such an award or some other form of alimony. The trial court did not abuse its discretion on this point, however, as there was competent evidence that (a) the Former Husband was employable but voluntarily remained unemployed, and (b) the Former Husband's gambling debts and misapplications of marital funds adversely affected the family's financial position and lifestyle. See § 61.08(2), Fla. Stat. (2015).

On cross-appeal, the Former Wife also argues that the Former Husband is confined by his pleadings to a claim for permanent periodic alimony, i.e., that he may not now claim some other form of alimony as specific relief that was not prayed for in any of his pleadings or by amendment at trial. Hernandez v. Hernandez, 444 So. 2d 35 (Fla. 3d DCA 1983). The Former Wife's position is well taken on this point as well.

The Amended Final Judgment of Dissolution of Marriage is affirmed in all respects.